

**SIGNED this 21st day of September, 2011.**

_Craig A. Gargotta_
_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 10-10599-CAG |
| | § | |
| UTEX COMMUNICATIONS CORP., | § | |
| | § | CHAPTER 11 |
| Debtor. | § | |

### MEMORANDUM OPINION

UTEX Communications Corp., d/b/a FeatureGroup IP, the debtor in possession ("Debtor" or "UTEX"), filed a petition under Chapter 11 of the Bankruptcy Code on March 3, 2010. UTEX was incorporated in Texas in 2000. UTEX provides "wholesale telecommunications services" to carriers that wish to take advantage of UTEX's interconnection with AT&T Texas ("AT&T"). UTEX charges its customers a monthly fee to take those parties' telecommunications traffic and deliver it to AT&T to run through AT&T's network so that it can reach its ultimate destination.

UTEX is a competitive local exchange carrier ("CLEC"). The Federal Telecommunications Act of 1996 requires incumbent local exchange carriers ("ILECs"), like AT&T, to enter into interconnection agreements with CLECs like UTEX. These interconnection

agreements ("ICA") establish terms and conditions on which ILECs provide their competitors with, among other things, interconnection and other telecommunication services on a wholesale basis. In August 2000, AT&T and UTEX entered into an ICA setting forth the terms, conditions, and prices under which AT&T agreed to provide UTEX with (a) the ability to purchase on a wholesale basis all of AT&T's telecommunications services for resale to end users on a retail basis, (b) "Unbundled Network Elements," (c) "Ancillary Functions", and (d) "Interconnection" services.

AT&T and UTEX have been litigating for many years in various federal courts and before the Public Utility Commission of Texas. On June 1, 2009, the Public Utility Commission of Texas entered a $3.77 million arbitration award in favor of AT&T, which UTEX has appealed ("PUC Docket No. 33323").

On July 2, 2010, AT&T filed a Proof of Claim in the amount of $9,570,642.76 (Claim No. 15) on account of pre-petition amounts owed by UTEX under the ICA based on the amount of the Arbitration Award in docket no. 33323 plus those charges incurred subsequent to the award. On September 28, 2010, UTEX filed its Objection to Claim of Southwestern Bell Telephone Company d/b/a AT&T Texas (docket no. 162). On October 25, 2010, AT&T filed its Response to UTEX Telecommunications Corp.'s Objection to Claim of Southwestern Bell Telephone Company d/b/a AT&T Texas (docket no. 167). On August 20, 2010, AT&T filed its Motion (A) For Allowance and Immediate Payment of Administrative Claims and (B) For Entry of An Order Compelling the Debtor to Immediately Assume or Reject the Interconnection Agreement with the Debtor and (C) For Relief From the Automatic Stay so that AT&T Texas May Suspend or Terminate the Interconnection Agreement (docket no. 148). In their motion, AT&T alleges that UTEX owed AT&T $102,000 for post-petition services as of the date they

2

filed the motion. At the time AT&T filed their Motion for Summary Judgment, AT&T alleged that figure grew to $162,020.79. UTEX filed its objection to AT&T's claim on September 28, 2010 (docket no. 163).

On January 10, 2011, both parties filed competing motions for summary judgment. In its motion for summary judgment, UTEX seeks to deny AT&T's claim for pre- and post-petition services and to compel discovery and an evidentiary hearing on the amounts due under the terms of the ICA (docket no. 187). AT&T, in its motion for summary judgment, requests that the Court allow its claims in the amounts filed and direct immediate payment of all outstanding post-petition invoices, in addition to terminating the automatic stay to allow AT&T to terminate or suspend the ICA (docket no. 188). The Court held a hearing on the competing motions for summary judgment on March 29, 2011.[1]

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C), and (G) on which this Court can enter a final judgment. This matter is referred to the Court under the District's Standing Order of Reference. Venue is proper under 28 U.S.C. §§ 1408 and 1409. The following represents the Court's findings of fact and conclusions of law made pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

## BACKGROUND OF DEBTOR

A.    The Debtor's Business

UTEX was incorporated in Texas in 2000. UTEX is a competitive local exchange carrier that provides local broadband transport communications services as well as voice origination, termination, and e-911 services to voice over internet protocol ("VOIP") and internet service

---

[1] After the Court took the related matters under advisement, the parties filed a number of briefs and further replies. See docket nos. 199, 200, 201, 213, 224, 231, 241, 243, and 244. The Court has considered and reviewed these pleadings in issuing this Memorandum Opinion.

providers ("ISP") (docket no. 7). Essentially, UTEX uses broadband internet connectivity to connect VOIPs and ISPs throughout the state of Texas. UTEX, in addition to several other entities, is a subsidiary of Worldcall, Inc., a Texas corporation ("Worldcall"). *Id.* Although UTEX registered as a CLEC with the Public Utility Commission of Texas ("PUC") in 2000, UTEX does not operate as a typical CLEC that competes with AT&T by primarily providing local telecommunication services to retail end-users in Texas. Instead, UTEX provides "wholesale telecommunications services" to carriers that wish to take advantage of UTEX's interconnection with AT&T. UTEX charges its customers a monthly fee to take those parties' telecommunications traffic and deliver it to AT&T to run through AT&T's network so that it can reach its ultimate destination.

B.      The PUC Matters

The following is taken primarily from the procedural history sections of the Orders of the PUC.

        1.      Docket 26381

The ICA went into effect on September 27, 2000, when it was approved by the PUC (docket no. 199, p. 6; "PUC Docket No. 22949"). The primary term expired on January 22, 2001, and AT&T provided a timely Non-Renewal notice, indicating that AT&T intended to terminate the ICA (docket no. 187, p. 8). Since that time the ICA has operated under "evergreen" status pending development of a new ICA. *Id.* PUC Docket No. 26381 involves an arbitration between UTEX and AT&T regarding the formation of a new ICA (docket no. 188, pg. 13).

UTEX filed its petition to arbitrate an ICA with AT&T on July 31, 2002, and AT&T filed its response on August 26, 2002 (docket no. 199, Ex. 1, p. 2). UTEX filed its amended petition

for arbitration on February 6, 2003, and AT&T filed its response on March 4, 2003. *Id.* UTEX filed its second amended petition on February 17, 2005, and AT&T filed its response on March 14, 2005. *Id.* The PUC issued an order abating this docket on June 22, 2006. *Id.* In 2009, UTEX filed a petition for preemption with the Federal Communications Commission ("FCC"). *Id.* On October 9, 2009, the FCC denied the petition for preemption, but indicated in the order that a new petition for preemption would be considered if the PUC failed to act on the dispute within nine months. *Id.* UTEX filed its motion to lift the abatement in the docket on November 17, 2009. *Id.* The Arbitrators issued an order on December 22, 2009, requiring the parties to file a joint decision-point list ("DPL") setting out the issues in dispute and proposed ICA language by January 29, 2010. *Id.* The Arbitrators convened a prehearing conference on January 15, 2010. *Id.*

Numerous disagreements arose between the parties, and they were unable to file the joint DPL and ICA language by the deadline imposed by the Arbitrators. *Id.* at 3. In Order No. 27, the Arbitrators outlined the scope of the issues in the proceeding, based on the Federal Telecommunications Act of 1996 (the "FTA"). *Id.* Order No. 24 directed the parties to use the Interconnection Agreement between Southwestern Bell Telephone Company and UTEX Communications Corp., set out in the UTEX petition as the baseline ICA for the DPL and ICA submissions. *Id.* This order also permitted the parties to update their submission to include the current state of negotiations between the parties and reflect any changes in law since the petition and response were filed. *Id.* In Order No. 30, in response to motions to strike portions of the DPL and ICA language, the Arbitrators struck a number of proposed ICA provisions because they were not based on the ICA set out in the petition and were not warranted by changes in law. *Id.*

The parties eventually filed a joint proposal regarding the scope of the DPL and ICA on March 29, 2010. *Id.* The parties filed direct testimony on March 29, 2010, and filed rebuttal testimony on April 7, 2010. *Id.* The Arbitrators convened a hearing on the merits on April 13–15, 2010. *Id.* The parties filed initial briefs on April 27, 2010, and filed reply briefs on May 7, 2010. *Id.* The Arbitrators issued the Proposal for Award ("PFA") on September 23, 2010. *Id.* The parties filed exceptions to the PFA on October 7, 2010, and replies to exceptions on October 19, 2010. *Id.*

The Arbitration Award was issued by the PUC on January 27, 2011. *Id.* at 159. UTEX and AT&T made a joint "conforming" filing on March 24, 2011 (docket no. 241). On April 14, 2011, the Commission issued an Order Extending Time to Act and Remanding Case. *Id.*

2.  Docket 33323 and the Order on Reconsideration

a.  Docket 33323

Docket 33323 before the PUC concerned interconnection charges billed by AT&T through September 2007 (docket no. 187, p. 5).

On November 15, 2005, UTEX filed with the PUC a complaint, request for expedited ruling, request for interim ruling, and request for emergency action regarding disputes with AT&T (then known as Southwestern Bell Telephone, L.P. d/b/a SBC Texas) (docket no. 188, ex. B, p. 4). That proceeding was assigned Docket No. 32041. *Id.* On November 22, 2005, AT&T filed a response to UTEX's complaint, which included a motion to dismiss for insufficiency and a motion to dismiss for lack of jurisdiction, arguing that the interim and expedited relief sought by UTEX should be denied. *Id.*

On December 19, 2005, Order No. 3 partially dismissed UTEX's claims, ruled on UTEX's request for interim relief, and required UTEX to file an amended complaint. *Id.* On

February 8, 2006, UTEX filed its First Amended Complaint and Request for Expedited Ruling. *Id.* On February 14, 2006, AT&T filed a response to UTEX's February 8th filing seeking dismissal of the complaint for insufficiency and requesting UTEX's request for relief be denied. *Id.* at 4–5. On September 1, 2006, Order No. 4 denied AT&T's motion for dismissal. *Id.* at 5.

On October 30, 2006, Order No. 7 in Docket No. 32041 (which corresponds to Order No. 3 in Docket No. 33323) consolidated Docket Nos. 33323 and 32401. *Id.* That same day, AT&T filed a petition under the FTA for post-interconnection dispute resolution with UTEX relating to billing disputes between UTEX and AT&T. *Id.*

On November 16, 2006, the Arbitrators ruled in Order No. 4 that the ICA does not support UTEX's attempts to invoice AT&T for performance breaches alleged under Attachment 17 of the ICA. *Id.* On November 29, 2006, Order No. 6 clarified that Order No. 4: (1) did not define CPN; (2) did not address the "where available" exception of Attachment 12; (3) did not define what constitutes a "call passed without CPN," and (4) did not address the process to be used in assessing inter-LATA toll charges on calls passed without CPN. *Id.*

On April 13, 2007, Order No. 18 denied UTEX's motions for summary decisions as well as AT&T's motion to dismiss and motion to dismiss with prejudice. *Id.*

On May 5, 2007, Order No. 21 required the parties to re-submit their DPL by May 21, 2007, and stated that the Arbitrators would create their own DPL in the absence of a suitable DPL filed by the parties. *Id.* On July 7, 2007, Order No. 26 memorialized the Arbitrators' final DPL developed from the parties' various individual DPL filings up to that date. *Id.* On August 3, 2007, UTEX responded to Order No. 26 that UTEX claimed it had not affirmatively proposed. *Id.*

On August 14, 2007, Order No. 31 memorialized the procedural schedule, the final DPL, and established guidelines for the prehearing conference on August 15, 2007.  *Id.* at 6

On August 20, 2007, Order No. 32 granted UTEX's requested interim relief by preserving the status quo business relationship between UTEX and AT&T until an entry of final order in this matter was adopted and issued by the PUC to reconsider Order No. 32*.  Id.*  On November 27, 2007, AT&T filed a letter expressing its willingness to defer consideration of the appeal of Order No. 32*.  Id.*  On December 11, 2007, the PUC issued an order indefinitely extending the time for ruling on AT&T's appeal of Order No. 32.  *Id.*

The parties filed direct testimony on October 15, 2007, and rebuttal testimony on October 29, 2007*.  Id.*  The Arbitrators conducted a hearing on the merits on November 7–9, 2007*.  Id.*  The parties filed their initial post-hearing briefs on December 21, 2007*, and* their reply briefs on January 22, 2008.  *Id.*

The PUC issued an arbitration award on June 1, 2009.  *Id.* at 142.  The PUC issued an Order on Arbitration Award on October 2, 2009 (docket no. 188, ex. C, p. 5).

b.        Order on Reconsideration of Order on Award (February 12, 2010)

On October 16, 2009, UTEX filed a motion for clarification directed at both the June 2009 arbitration award and the PUC's order approving that award (docket no. 188, ex. G, p. 4). On October 22, 2009, UTEX filed a motion for reconsideration of the arbitration award (docket no. 188, ex. E) and an additional motion for clarification (docket no. 188, ex. F).

On February 12, 2010, the PUC issued an Order on Reconsideration of Arbitration Award (docket no. 188, ex. G) (hereinafter "Order on Reconsideration").  In the Order on Reconsideration, the PUC affirmed the arbitration award in all respects but one relating to § 1.4.1 of Attachment 12 of the parties' ICA dealing with an Enhanced Service Provider ("ESP")

exemption provision. *Id.* at 1. On March 3, 2010, UTEX filed a Motion for Reconsideration of Order on Reconsideration of Arbitration Award (docket no. 188, ex. H). On May 14, 2010, the PUC issued an Order Denying Motion for Reconsideration (docket no. 188, ex. I).

On November 12, 2010, UTEX filed an appeal of the PUC's decision in Docket 33323 to the U.S. District Court for the Western District of Texas (docket no. 187, p. 32). To the best of this Court's understanding, the appeal is presently still pending before the District Court.

### UTEX'S OBJECTION TO CLAIM OF SOUTHWESTERN BELL TELEPHONE COMPANY D/B/A AT&T TEXAS

AT&T submitted its claim for $9,570,642.76 on July 2, 2010. AT&T alleges that its claim stems from the approximately $3.77 million awarded by the PUC in Docket 33323 for AT&T's bills through September 2007, and the remainder of the claim is for amounts due on account of service charges and interest owed under the ICA through the date of filing the proof of claim.

On August 20, 2011, UTEX filed its Objection to Claim (docket no. 162). UTEX objects to AT&T's claim on several grounds:

1.     UTEX argues that AT&T's claim lacks sufficient documentation under FED. R. BANKR. P. 3001(c).

2.     AT&T failed to provide sufficient information in order for Debtor to determine the amount of the claim or its validity.

3.     UTEX argues that while AT&T's claim is based on Docket 33323, UTEX "firmly believes the decision is fatally infected by multiple reversible errors of law and is arbitrary and capricious on many points." *Id.*

4.     UTEX argues that even if it is incorrect regarding the appeal of Docket 33323, Section 4.3 of the General Terms and Conditions of the parties' ICA will operate to extinguish

AT&T's claim.  UTEX argues Section 4.3 "expressly limits [its]liability to only certain fiscal obligations, and amounts putatively owed for 'Interconnection' and 'intercarrier compensation' for traffic exchange is not a listed category". *Id.*

5.      UTEX argues that AT&T has changed its method of calculating the amounts owed for all usage after September 2007, which was the end date of the usage and charges that gave rise to the finding in Docket 33323.  UTEX acknowledges that they "cannot discern whether the precise changes for usage after September 2007 are consistent with and fully implement the PUC majority's decision in the Order on Reconsideration of Order on Award (February 12, 2010)," which UTEX alleges overruled the original Arbitrator's legal analysis and resolution of facts.

6.      UTEX asserts that the PUC's decision in the Order on Reconsideration of Order on Award (February 12, 2010) in fact requires a different method of classifying traffic and therefore the amounts that are due for all usage after September 2010.

7.      UTEX argues the claim should be disallowed because UTEX is entitled to an offset from AT&T that is "far larger than the amount set out in the Claim." *Id.*

On October 25, 2010, AT&T filed its Response to Debtor's Objections (docket no. 167). In their response, AT&T argues first that UTEX has failed to rebut the *prima facie* validity of AT&T's proof of claim.  Second, AT&T argues that UTEX's stated intent to appeal the PUC's ruling does not affect the *res judicata* and collateral estoppel effect given to the Arbitration Award.  Third, in disputing UTEX's arguments related to Section 4.3 of the current ICA, AT&T argues that amounts due from UTEX under the current ICA cannot be involuntarily waived by a replacement agreement that does not yet exist.  Fourth, AT&T asserts that they have not changed their method for calculating charges due under the ICA and that UTEX lacks any factual support

to back this up. Fifth, AT&T disputes UTEX's assertion that the PUC's Order on Reconsideration required AT&T to change its calculation of access charges due under the ICA. AT&T argues that the Order on Reconsideration only recognized that some of UTEX's customers are ESPs, but still held that this did not change the method for AT&T to calculate their bills. Six, AT&T disputes UTEX's alleged claims for setoff. Seventh, AT&T alleges that UTEX is merely attempting to relitigate Docket 33323 in this Court.

### AT&T's Motion for Administrative Claims

On August 20, 2010, AT&T filed its Motion (A) For Allowance and Immediate Payment of Administrative Claims and (B) For Entry of An Order Compelling the Debtor to Immediately Assume or Reject the Interconnection Agreement with the Debtor and (C) For Relief From the Automatic Stay so that AT&T Texas May Suspend or Terminate the Interconnection Agreement (docket no. 148). In that motion, AT&T states that since UTEX filed its bankruptcy case, the it has failed to pay all of the post-petition amounts due under the ICA for post-petition services. At the time AT&T filed the motion, AT&T alleges UTEX owed them $102,000. AT&T filed the motion to seek a court order compelling immediate payment of this claim as an administrative claim under section 503(b) of the Bankruptcy Code and for authority to suspend or terminate the ICA based on UTEX's non-payment. AT&T argues (1) that they are entitled to an allowed administrative expense claim pursuant to Section 503(b)(1)(a) of the Bankruptcy Code; (2) AT&T is entitled to immediate payment of this administrative expense; and (3) the Court should require UTEX to immediately assume or reject, or allow AT&T to terminate, the ICA due to UTEX's non-payment for post-petition services.

On September 28, 2010, UTEX filed its response to AT&T's motion (docket no. 163). In their response, UTEX repeats the same arguments against AT&T's proof of claim. In addition,

UTEX argues that there is no evidence of what level or amount of post-petition services are being provided by AT&T and that AT&T has not proved they have suffered any losses. UTEX also argues that they are entitled to Meet Point Billing ("MPB") trunks.

### LEGAL ANALYSIS

As discussed, both parties filed competing motions for summary judgment on AT&T's pre-petition and post-petition claims. The Court held a hearing on the motions on March 29, 2011. At the hearing, AT&T effectively laid out the areas of dispute between UTEX and AT&T. UTEX, in its briefs and at oral argument, states that there are contested issues of fact requiring discovery and a hearing. The issues UTEX believes require a hearing are (1) whether AT&T allegedly changed its method of calculating the percentage of non-CPN calls; (2) when UTEX began meeting the required no-CPN percentage; and (3) whether UTEX believes  itsbills have changed. AT&T will not give its detailed call records to UTEX; therefore, UTEX has no way to verify this information. UTEX and AT&T also raise several legal issues in their pleadings and motions: (1) the interpretation of the PUC's orders; (2) whether Docket 33323 is entitled to *res judicata*/collateral estoppel effect; (3) whether section 4.3 of the existing ICA operates to absolve and discharge UTEX from all unpaid debts; (4) whether UTEX is entitled to MPB under the existing ICA; (5) whether UTEX is entitled to the offsets it claims; (6) UTEX's argument that, if AT&T is entitled to an administrative claim for the post-petition bills, that claim does not need to be paid immediately; (7) whether UTEX must be ordered to immediately assume or reject the ICA; and (8) whether AT&T's Proof of Claim is entitled to *prima facie* validity.

### SUMMARY JUDGMENT STANDARD

Bankruptcy Rule 7056 applies Rule 56(c) of the Federal Rules of Civil Procedure to adversary proceedings. Summary judgment is appropriate "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To the extent facts are undisputed, a Court may resolve a case as a matter of law. *Celotex Corp.*, 477 U.S. at 323; *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994). The Fifth Circuit has stated "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

To the extent that the non-moving party asserts the existence of factual disputes, the evidence offered by the non-moving party to support those factual contentions must be of a quality sufficient so that a rational fact finder might, at trial, find in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986) (non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) ("adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."). If the record "taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *LeMaire v. Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007).

**PARTIES' CONTENTIONS**

A.     Legal Issues

1.     The PUC's Orders

a.     The Order on Reconsideration

As discussed, there have been several orders from the PUC concerning these parties. UTEX argues that AT&T relies on holdings in the Arbitrators' Award in Docket 33323 that the PUC majority reversed in the Order on Reconsideration.  To simplify what appeared at first glance to be a complex issue, UTEX is arguing that the Order on Reconsideration found that much of UTEX's traffic is ESP based and therefore the ESP exemption in the ICA applies, and AT&T cannot bill UTEX for this traffic.

In support of this argument, UTEX alleges in its Motion for Summary Judgment that the Order on Reconsideration reversed the Arbitrator's Award in three respects.  UTEX says that the Arbitrator in Docket 33323 initially ruled that none of UTEX's customers are ESPs and thus none of the traffic was destined for or received from ESPs.  UTEX points to the Order on Reconsideration to say that the PUC overruled this finding in holding that "at least some of UTEX's customers are Enhanced Service providers and some of the traffic in question was destined for or received from ESPs."  UTEX cites to the Order on Reconsideration for this quote, but the Court was unable to locate this precise quote in the document (see docket no. 187, p. 16-17).  What the PUC held was that "[b]ased on the information provided by UTEX, the Commission disagrees with the arbitrators' determination, and finds that some of this traffic is to or from ESPs."  AT&T admits that this is a correct interpretation of the Order on Reconsideration (see docket no. 188, p. 39).

The second change UTEX argues is that the PUC made changes to the way to determine if a call is local. The Arbitrator in Docket 33323, UTEX argues, looked at the entire communication, and not to the "telecommunications portion" of the service that is provided by UTEX and AT&T. As a result of this ruling, the Arbitrator interpreted the agreement to rate traffic on an "end to end" basis and used the calling and called numbers as proxies for the end-points. If the numbers were not "local" to each other, then access applied. In order to determine if a call was local, the Arbitrator just looked at the calling and called numbers. UTEX argues that the majority in the Order on Reconsideration reversed this holding by looking at the "telecommunications portion"—*e.g.*, the portion of the communication that is provided by UTEX and AT&T—and the end points of the "telecommunications portion" are used to rate the call. The Order on Reconsideration held, according to UTEX, that if the "telecommunications portion" is entirely local then the ICA calls for "no compensation" (or "bill and keep") under § 1.4.1 of the ICA, and the numbers do not matter except and to the extent the signaling information did not include "CPN." UTEX summarizes this argument by saying that "for some traffic the Arbitrator's exclusive reliance on the numbers present in signaling was rejected and a completely different test was used" (docket no. 182, p.17).

AT&T, in response, refers back to the Order on Reconsideration. AT&T argues that the ESP exemption only applies to telecommunications traffic that originates and terminates in the same local calling area. The Order on Reconsideration states that "the ESP exemption in § 1.4.1 is limited to telecommunications traffic that originates and terminates in the same local calling area." Order on Reconsideration, 4. The Order on Reconsideration in turn cites to pages 66-67 of Docket 33323. It was on those pages of Docket 33323 where the PUC resolved the issue of whether AT&T's chargers are correct in terms of the treatment of ESPs. UTEX pointed to

another case, the WCC Arbitration Award, for the proposition of treating ESP access as local. *See* Docket 33323, 62-63. The PUC found that AT&T's charges complied with the WCC Arbitration because this involved contract interpretation. *Id.* at 66. The PUC found that "a call to an ISP is local if the telecommunications component of the call originates and terminates in the same local area. Conversely, a call to an ISP is long distance if it originates and terminates in different local calling areas." *Id.* The PUC goes on to say that "section 1.4.1 does not expand what constitutes a local call to include non-local ESP calls (i.e., calls where the telecommunications service component originates and terminates in different calling areas)." *Id.* at 67. The Order on Reconsideration cites to these pages of Docket 33323 in stating that it reaffirms the Arbitrator's ruling that the ESP exemption is limited to telecommunications that originates and terminates in the same local calling area. The Court therefore agrees with AT&T's reading of the Order on Reconsideration and finds that the Order on Reconsideration did not alter the treatment of ESP traffic.

UTEX makes more arguments about the Order on Reconsideration overruling or changing the way AT&T could charge UTEX for calls that involved ESPs. The Court will not reconsider those arguments as the Court concluded above that the Order on Reconsideration did not alter the treatment of ESP traffic, as UTEX has argued. Additionally, the Order on Reconsideration goes on to state that "[t]he ESP exemption does not subjugate, take precedence over, or negate the operation of the Calling Party Number (CPN) provision in § 7.5 of Attachment 12. Thus, the failure to provide the CPN results in the calls being properly characterized as intraLATA toll traffic pursuant to the ICA." The Court, therefore, agrees with AT&T's reading of the Order on Reconsideration and holds that the Order on Reconsideration did not change the manner in which AT&T rated calls involving ESPs. UTEX's arguments that

16

AT&T's bills post-September 2007 are invalid because AT&T "rel[ies] on holdings in [33323]" that the PUC majority clearly reversed [in the Order on Reconsideration]" (docket no. 187, p. 16) are rejected as a matter of law.

          b.        The Effect of Docket 26381 on Docket 33323

UTEX argues in several areas that Docket 26381 impacts the holding in Docket 33323 (see docket no. 199, p. 22-24). However, as pointed out by AT&T, Docket 26381 concerns the arbitration of a replacement ICA. Docket 26381 does not involve the interpretation of the existing ICA. Therefore, the Court will not discuss or entertain UTEX's arguments that Docket 26381 undermines the ruling in Docket 33323.

          2.        The Legal Effect of Docket 33323

UTEX argues that the $3,777,388.56 the PUC found UTEX owes AT&T is not a present obligation. UTEX argues that AT&T does not have an enforceable judgment based on Docket 33323 as the order is not a judgment for money. UTEX states that, unlike a court, the PUC lacks the express or implied authority to award damages. UTEX cites to *Penny v. Southwestern Bell Tel. Co.*, 906 F.2d 183, 186 (5th Cir. 1990) for the proposition that the judicial power to award damages cannot be found in the Public Utility Regulatory Act, either through express terms or by implication. UTEX cites a litany of cases which hold that after a state commission interprets an ICA, if money is involved, the prevailing party must then turn to a court with judicial power and reduce the award to an actual judgment, much like what must occur with regard to a decision by a commercial arbitrator (see docket no. 199, p. 8-12 (citations omitted)). UTEX states that AT&T itself admitted during the PUC proceeding that it would have to go to court to reduce the finding to a judgment and states that AT&T has not yet done so.

Before going into AT&T's response to UTEX's arguments here, it is worth pointing to a quote later in the Fifth Circuit case cited by UTEX. That Court, while stating that the PUC does not have exclusive jurisdiction over a rate discrimination case, does have a role to play in the adjudication of that claim. *Penny*, 906 F.2d at 186-87. The Fifth Circuit went on:

> The PUC has some obvious expertise in the area of determining whether rates have been applied discriminatorily. Of perhaps even greater importance is the fact that the PUC can provide more uniformity in the adjudication of that issue than can the number of different courts in which the claims may be brought. Under the doctrine of primary jurisdiction, a trial court can reach out and touch that expertise and uniformity and then use the PUC's determination as a basis for determining whether and what types of damages are appropriate in a particular case.

*Id.* at 187.

AT&T follows this line of thinking and argues that "while a party to a proceeding before the Texas PUC may need to go to a District Court for collection purposes (only if the other party refuses to comply), the Texas PUC's rulings are still entitled to *res judicata* and collateral estoppel effects" (docket no. 200, p. 17). The Fifth Circuit has held that Texas law determines the preclusive effect of a Texas administrative decision on subsequent federal litigation. *Rhoades v. Casey*, 196 F.3d 592, 601-02 (5th Cir. 1999). Under Texas law, determinations made by a Texas administrative agency acting in a judicial capacity are afforded collateral estoppel and *res judicata* effect. *Igal v. Brightstar Info. Tech. Group, Inc.* 250 S.W.3d 78, 86-90 (Tex. 2008) (internal citations omitted). Texas courts have held that "[t]he doctrine of collateral estoppel or issue preclusion can be based on an administrative decision if the administrative agency acted in a judicial capacity and resolved disputed issues of fact properly before it which the parties had an adequate opportunity to litigate." *Cianci v. M. Till, Inc.*, 34 S.W.3d 327, 330 (Tex.App.—Eastland 2000) (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)) (additional citations omitted). Additionally, the Fifth Circuit has held that

"[t]he doctrine of *res judicata* applies to relitigation of claims previously determined by an administrative agency." ***Rhoades***, 197 F.3d at 602.  So, as can be seen, an order from an administrative agency can be given both *res judicata* and collateral estoppel effect.  Therefore the Court holds that UTEX's argument that the amount awarded in Docket 33323 is not a "present obligation" is a red herring to the greater issue of whether AT&T is entitled to their pre and post-petition claims.

However, merely determining that an order from an administrative agency can be given *res judicata* and collateral estoppel effect is not enough.  To determine whether an action is barred by *res judicata*, the Fifth Circuit holds that a court should consider "whether the prior judgment was rendered by a court with proper jurisdiction, whether there was a final judgment on the merits, that the parties are identical in both actions, and that the same cause of action is involved in both suits." ***Rhoades***, 196 F.3d at 602.  The Court agrees with AT&T and finds that *res judicata* applies to the PUC's orders and Arbitration Award in 33323 because (1) the PUC's award is a final judgment on the merits by an administrative agency of competent jurisdiction; (2) UTEX and AT&T were both parties to the proceedings; and (3) UTEX is attempting to raise the same claims as were raised or could have been raised in the first action.

In order to assert the bar of collateral estoppel, the party must show that: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action.  ***Sysco Food Servs. Inc. v. Trapnell***, 890 S.W.2d 796, 801 (Tex. 1994) (citing ***Allen v. McCurry***, 449 U.S. 90, 94-95 (1980)) (additional citations omitted).  The Court finds that the facts have not changed with regard to the order issued by the PUC in Docket 33323, those facts were essential to the finding by the PUC, and that it is the same parties before

the Court now as was before the PUC in Docket 33323. Therefore, Docket 33323 is to be given preclusive effect by the Court.

    3.    <u>Section 4.3 of the ICA</u>

UTEX argues that the express terms of the parties' ICA eliminates all interconnection and inter-carrier "charges" upon termination of the agreement and thus AT&T is not entitled to any sums based upon its interconnection or inter-carrier billings. UTEX asserts that when the current ICA is terminated, all amounts claimed by AT&T on both a pre-petition and post-petition basis will be extinguished under Section 4.3 of the existing ICA. Section 4.3 of the ICA states:

> Upon termination of this Agreement, CLEC's liability will be limited to payment of the amounts due for Network Elements, Combinations, Ancillary Functions and Resale Services provided up to and including the date of termination and thereafter as reasonably requested by CLEC to prevent service interruption, but not to exceed one (1) year. The Network Elements, Combinations, Ancillary Functions and Resale services provided hereunder are vital to CLEC and must be continued without interruption. When CLEC provides or retains another vendor to provide such comparable Network Elements, Combinations, Ancillary Functions or Resale services, SWBT and CLEC agree to cooperate in an orderly and efficient transition to CLEC or another vendor. SWBT and CLEC further agree to coordinate the orderly transition to CLEC or another vendor such that the level and quality of the Network Elements, Combinations, Ancillary Functions and Resale Services is not degraded and each Party will exercise its best efforts to effect an orderly and efficient transition.

Docket no. 188, Ex. A, § 4.3 (hereinafter "ICA"). As discussed above, the purpose of Docket 26381 is to establish the terms for a replacement ICA between AT&T and UTEX, so the termination of the current ICA appears imminent. Additionally, UTEX points to section 44.1 of the ICA, titled "Survival of Obligations." That section of the ICA states:

> Any liabilities or obligations of a Party for acts or omissions prior to the cancellation or termination of this Agreement, any obligation of a Party under the provisions regarding indemnification, Confidential Information, limitations on liability, and any other provisions of this Agreement which, by their terms, are contemplated to survive (or to be performed after) termination of this Agreement, will survive cancellation or termination thereof.

ICA, § 44.1. UTEX argues that it is clear from the express terms of Section 4.3 that upon termination, liability will be limited only to those named in the ICA, and that interconnection and intercarrier compensation are not specifically mentioned. Therefore, UTEX argues, when the agreement terminates, AT&T's pre and post-petition claims will be extinguished.

In response, AT&T argues first that the charges due AT&T are charges incurred by UTEX under the *existing* ICA; there is currently no replacement agreement in force, so this argument is effectively premature. Additionally, AT&T argues that its proof of claim includes the approximately $3.77 million awarded as a result of Docket 33323, and that UTEX cannot collaterally attack this award, as UTEX's "defense" of section 4.3 of the ICA was available to UTEX at the time the parties argued before the PUC.

AT&T next argues that UTEX's reading is not plausible as a contract "must be interpreted in a manner that 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive'" (docket no. 188, p. 34) (quoting *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005)). AT&T alleges that the purpose of Section 4.3 of the ICA was to allow for post-termination continuation of telecommunication services for a certain period of time during a transition in order to prevent service disruption which would be detrimental to the CLEC and its end-users. The provision provides for the continuation of the listed services; it does not wipe away existing payment obligations for other services.

AT&T next points to Section 44.1 of the ICA to argue that any liabilities or obligations of a party for acts or omissions prior to the cancellation or termination of the ICA will survive cancellation or termination. *See* ICA, § 44.1. AT&T states that there is a list in Section 44.1, and each item is separate and distinct and will survive termination.

AT&T makes several grammar related arguments in its Motion to Dismiss which the Court finds unnecessary to delve into (see docket no. 188, p. 36-37). Additionally, AT&T argues that a retroactive application of a prospective ICA to terminate AT&T's existing contract rights would violate the Contracts Clause of the United States Constitution as well as the Contracts Clause and prohibition against retroactive laws in the Texas Constitution. The Court finds no reason to go into these arguments either.

UTEX responded by arguing that the ICA is clear on its face and that AT&T is merely attempting to inject ambiguity. UTEX argued that AT&T's "unfair", "unjust", or "illegal" arguments deserve no consideration. UTEX additionally responded to AT&T's argument that UTEX waived this argument by not raising it during the Docket 33323 proceedings by arguing that the current ICA is a result of arbitration by the PUC, so any attack on the wording of the contract is also an impermissible collateral attack on the PUC.

After reviewing the arguments of AT&T and UTEX, the most convincing, and this Court finds controlling, argument is the plain meaning of the contract. The reading UTEX advocates would hypothetically allow for a party to never pay a bill over a period of years, dispute any bills it received, have arbitrators find the party liable for millions of dollars in unpaid bills, and then that party declare bankruptcy, choose to reject the contract, and suddenly be free of these unpaid obligations. Additionally, UTEX's reading of the contract is unclear as to how the contract would handle a situation involving, for example, indemnification. Indemnification is listed in Section 44.1 as a liability that survives cancellation of the ICA, but is not listed in Section 4.3. At best, the ICA is ambiguous as to what obligations may survive termination. The Court is not tasked with making that determination this day. The Court has been tasked with determining whether, by operation of the existing ICA, all obligations owed by UTEX to AT&T for

intercarrier and interconnection compensation will be wiped away. The Court finds that the ICA will not operate in this manner.  Thus, UTEX's argument to this effect fails as a matter of law.

4.    <u>Meet Point Billing</u>

UTEX alleges that all of AT&T's post-petition access billings to UTEX are disallowed due to AT&T's refusal to engage and provision MPB for all "access" traffic.  UTEX alleges that AT&T has refused to work with UTEX on establishing MPB.  Because AT&T has refused to let UTEX establish this type of system, UTEX is forced to continue routing their calls in a manner which results in higher bills.  UTEX points to page 117 of the Arbitration Award in Docket 33323 to argue that "the Arbitrator also made it perfectly clear that – consistent with the interconnection agreement – Debtor could request establishment of meet point billing trunks and the parties were required to engage in joint network planning and establish a separate set of trunk groups" (docket no. 187, p. 28-29).  The Court is unaware where UTEX hears the Arbitrator say this, let alone where the Arbitrator makes it perfectly clear.

Nonetheless, there appears to be a dispute concerning whether there were MPB trunks between UTEX and AT&T.  UTEX argues this "revelation clearly warrants discovery and a hearing on the facts" (docket no. 199, p. 31).  UTEX asserts that it has attempted to meet with AT&T to work towards establish MPB, but those efforts have not been fruitful.  Quizzically, UTEX then discusses AT&T's assertion that UTEX is not entitled to MPB as being odd because "[i]f, as AT&T claims, UTEX is not entitled to MPB, then why did AT&T establish those trunks it told the PUC did not exist but then told the Court do in fact exist?"  *Id.* at 32.  This is odd because, as discussed in the previous paragraph, it was UTEX who was responsible for establishing the MPB trunks.  This does not appear relevant to the current issue, just an example of the confusion UTEX has injected into this case.

In AT&T's Motion for Summary Judgment, AT&T explains what MPB is:

> Meet Point Billing can occur when access services is provided by more than one company.  It is used when access charges are levied by two or more Local Exchange Companies for the processing of an InterLATA telephone call (i.e., a long distance call) by an IXC.  The two Local Exchange Companies then jointly bill the third party IXC for access charges.

Docket no. 188, p. 43 (internal citations omitted).  AT&T additionally explained what is required for MPB:

> Meet Point Billing arrangements require that the CLECs [sic] customers be Interexchange Carriers ("IXCs") and the traffic, therefore, be to or from an IXC. An IXC is a telecommunications company that carries interLATA communications, i.e., a long distance telephone company.  In addition, a Meet Point Billing arrangement requires certain data exchange between the CLEC and AT&T Texas with respect to the IXC—most importantly the IXC's Carrier Identification Code (the "CIC")—so that the parties can bill and collect access charges from the IXC.

*Id*. at p. 42 (internal citations omitted).  At the time of the Docket 33323 award, UTEX claimed none of its customers were IXCs.  Docket 33323, p. 47.   As such, the Court agrees with AT&T that, under the terms of the ICA, UTEX did not meet the requirements to establish MPB at the time of the Docket 33323 award.

UTEX alleges that they are attempting to establish jointly provided trunks and intend to directly serve IXCs that hold out as IXCs, and to implement a particular type of jointly provided access called "Feature Group A" that does not require a CIC that can be used by both carriers and non-carriers.  UTEX alleges that AT&T is obstructing UTEX's efforts to implement this.

AT&T described Feature Group A ("FGA") as:

> An old line-side access method usually implemented such that an end-user has to dial a local telephone number, then after being connected to a long distance carrier, it gets a second dial tone, and then is required to enter some identifying information (such as a passcode) and the desired long-distance number.

Docket no. 200, p. 11-12.  AT&T states that UTEX first brought up FGA on January 21, 2011, and AT&T timely responded on February 9, 2011 by requesting the necessary information in order to properly implement FGA.  AT&T argues this is irrelevant anyway, since this has nothing to do with outstanding charges.  This is true, but UTEX is making this argument pursuant to AT&T's motion for allowance of administrative claims, so it is relevant to some of AT&T's post-petition billings.  However, the Court finds, based on the above discussion, that UTEX has not shown they have met the requirements for MPB.  Telling is the argument in Debtor's Motion for Summary Judgment where it discusses how it has attempted to work with AT&T to mitigate charges, and AT&T has responded by explaining why UTEX's proposed methods will not work.[2]  AT&T has responded to UTEX with regards to MPB, and it appears, as AT&T puts it, UTEX just does not like what AT&T has to say.  For these reasons, the Court does not find that AT&T's post-petition billings should be disallowed for AT&T's alleged failure to establish MPB.

5.    Offsets

UTEX asserts that AT&T's claims should be disallowed because UTEX is owed an offset from AT&T.  UTEX argues that if and to the extent there has been any traffic that was Public Switched Telephone Network ("PSTN") originated and handled by an IXC, then its tariffs impose an access charge just as do AT&T's.  If and to the extent "the numbers" control rating as

---

[2] The example UTEX gives is:

> For example, UTEX interprets Skype traffic to be ESP local.  Notwithstanding UTEX's understanding of this fact, UTEX has offered to AT&T in MPB meetings to route such traffic over MPB trunks if AT&T believes it incurs an access charge.  AT&T, however, has correctly pointed out that Skype traffic does not have IXC identifiers.  The result, according to AT&T engineers, is that such traffic cannot be routed using MPB.

Docket no. 187, p. 28.

AT&T contends,[3] then "the numbers" reveal that AT&T is the responsible originating carrier – to UTEX – for the access charge. UTEX goes on to say that for every call that AT&T proves was PSTN-originated and handled by an IXC there must be a further inquiry to determine if "the number" (the telephone number of the caller who made the call) is an AT&T number. UTEX states that its analysis shows that AT&T itself is the largest entity that would owe access charges to UTEX. UTEX posits that what UTEX refers to as the "AT&T family" is liable to UTEX for $3,262,516 for the access charges under UTEX's "OCN billing" calculations. The amount of OCN liability, UTEX argues, is directly related to the amount of traffic that is found to be "PSTN-originated" and "handled by an IXC"—which are two criteria of any obligations under the Docket 33323 result. UTEX concludes by saying that before it should be required to pay anything to AT&T, this Court must first determine how much AT&T owes Debtor in OCN billings.

AT&T responds to these arguments first by saying that UTEX's theory that if the CPN is an "AT&T number," then an AT&T entity would be the originating carrier is a fallacy because with telephone number portability, that telephone number could be with an end-user that is now a customer of another telecommunications provider.

AT&T next discusses how UTEX sent demand letters to AT&T affiliates in the summer of 2009, after the PUC issued its arbitration award in June 1, 2009. AT&T says they have cause to believe that UTEX sent these demand letters to numerous other Local Exchange Carriers making the same OCN claims. UTEX lists these claims on their Amended Schedules at Schedule B-2, totaling over $10 million for the OCN claims UTEX is making against AT&T and other providers (docket no. 71). AT&T argues that these claims have no basis in law or fact, in that AT&T is unaware of any other telecommunications company making such claims, and that

---

[3] And this Court found above.

not a single Local Exchange Carrier has paid UTEX for these claims. AT&T states that there is no basis for UTEX to go outside Texas for access charges for a call that is handed off to UTEX prior to the date of its OCN billing in 2009.

AT&T's next argument is that a claim objection proceeding is not the proper forum in which to raise a separate alleged counterclaim by UTEX against AT&T or its affiliates. AT&T states that until the claims are finally adjudicated in some forum, the mere allegation of such claims, standing alone, does not invalidate AT&T's pre or post-petition claims against UTEX. AT&T is correct in arguing that UTEX's argument is no reason to hold up payment of an administrative claim. The Fifth Circuit holds that a bankruptcy court need not consider defenses to a creditor's claim, because the issue before a court in determining if a creditor is entitled to an administrative expense is whether the creditor has met its burden of proving that the service benefited the bankruptcy estate. ***Toma Steel Supply, Inc. v. TransAmericanNatural Gas Corp. (In re TransAmerican Natural Gas Corp.)***, 978 F.2d 1409, 1419 (5th Cir. 1992). The claims for offset are relevant in making the determination of whether the services provided by the creditor are beneficial to the estate, but a court need not go into a full evidentiary hearing in order to rule solely on the creditor's right to an administrative expense. *Id.*

AT&T next argues that UTEX's claims for offsets based on OCN billing is based on UTEX's shifting arguments. UTEX claims in some arguments that its traffic does not originate on the PSTN, but rather originates on the internet as "ESP" traffic, but in UTEX's offset argument, UTEX argues that the traffic *did* originate on the PSTN with Local Exchange Carriers.[4]

---

[4] UTEX's response is that they are making this offset argument based on AT&T's interpretation of the Docket 33323 award, and this offset billing is just the natural consequence of AT&T prevailing in its arguments.

AT&T also argues that UTEX has failed to provide any description regarding the "services" that UTEX claims it provided to AT&T or its affiliates.  UTEX responds by saying that AT&T is well aware of one offset—the OCN billing discussed above—and there is another offset related to the 26381 Arbitration.  UTEX asserts that AT&T has failed to load "500" numbers.  UTEX states that under the Docket 33323 Award, UTEX is not allowed to send bills for AT&T breaches, and must establish through alternative means and measures the amounts due from AT&T to UTEX for these breaches.  One specific Interconnection duty AT&T has breached pre-petition and continues to breach post-petition is its blocking of routing UTEX "500" numbers.  UTEX asserts that it should be entitled to an offset for any Interconnection charges after the Docket 33323 award for the breaches AT&T has committed by not allowing routing of "500" numbers.  As discussed above, and argued by AT&T, as this involves Docket 26381, a non-final arbitration involving a new ICA between the parties, this argument is not relevant to the charges owed by UTEX under the current ICA.

AT&T is correct that this is not the appropriate way to bring a right of setoff.  Setoff is treated as a form of counterclaim for procedural purposes.  *See* ***Security Pac. Nat'l Bank v. Enstar Petroleum Co. (In re Buttes Res. Co.)***, 89 B.R. 613, 615 (S.D.Tex. 1988).  In objecting to a claim by a creditor, a party in interest shall not include a demand for relief of a kind specified in Bankruptcy Rule 7001, but may include the objection in an adversary proceeding.  FED. R. BANKR. P. 3007(b).  Bankruptcy Rule 7001 states that "a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under § 554(b) or § 725 of the Code, Rule 2017, or Rule 6002" constitutes an adversary proceeding.  FED. R. BANKR. P. 7001(1).  In order to commence an adversary proceeding, a party must file a complaint with the court.  FED. R. BANKR. P. 7003.  Procedurally,

AT&T is correct.  An objection to claim is the improper outlet for raising a claim of set off. Therefore, the Court finds that UTEX's arguments for a right to setoff, for both pre and post-petition claims by AT&T, are denied as a matter of law.

      6.    <u>Administrative Claim</u>

UTEX, citing to *In re DVI, Inc.*, 308 B.R. 703, 708 (Bankr. D.Del. 2004), argues that an administrative claim under 11 U.S.C. § 503(b) need not be paid immediately, but can be paid as late as the confirmation date.  UTEX asserts that the question of immediate payment of allowed administrative expense is governed by the rule that applies to all administrative expense claims asserted under § 503(b); that is, that "the time of payment of administrative expenses is within the discretion of the bankruptcy court."  *In re Am. Res. Mgmt. Corp.*, 51 B.R. 713, 719 (Bankr. Utah 1985).  UTEX cites to Norton to argue bankruptcy courts have discretion in determining if the debtor must pay immediately.  2 NORTON BANKR. L. & PRAC. 2d § 42:14 ("In most situations the courts prefer to postpone payment of the administrative claim until after confirmation of a plan or the distribution in a liquidation.  However, once a claimant has requested payment, the court may exercise its discretion whether circumstances warrant immediate response."). Therefore, argues UTEX, the Court has discretion whether to order immediate payment or not.

Additionally, UTEX argues that AT&T did not provide a "service" and the "benefit" to the Estate is not equal to AT&T's incorrect billings.  UTEX makes it clear it is not arguing that having service is vital to the conduct of its business.  UTEX is denying that AT&T has provided any "service" to UTEX; instead, AT&T is merely fulfilling a statutory duty that was then contractualized through the ICA.  This argument by UTEX essentially turns into another variation on their arguments that AT&T has misapplied the Docket 33323 result and the Order on Reconsideration.  UTEX states that:

> The dispute between the parties is, was, and likely will always be how certain traffic is rated under the Communications Act and then the ICA. The argument is the amount of "value" that accrued to the estate, and that value is best measured by what the ICA – as *interpreted by the PUC in Docket 33323* (for now, pending UTEX's "appeal") – says is the applicable and proper price for transport and termination.

Docket no. 199, p. 44-45 (emphasis in original). However, the Court has already ruled on what it finds is the correct interpretation of Docket 33323 and the Order on Reconsideration, and therefore there is no dispute over the appropriate way to rate traffic.

Finally, UTEX argues that the parties disagree over what the contract rate "is" for traffic with CPN that does not originate on the PSTN and UTEX asserts that AT&T is not calculating its bills in the PUC approved method. As the Court has ruled on the issue of the interpretation of Docket 33323 and the Order on Reconsideration, the Court finds that there have been no changes to the Docket 33323 result and that, as the parties say, "the numbers control."

In response, AT&T cites to Section 364(a) of the Bankruptcy Code, which states:

> If the trustee is authorized to operate the business of the debtor under section 721, 1108, 1203, 1204, or 1304 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.

AT&T devotes several pages in its Response to Debtor's Motion for Summary Judgment arguing that AT&T is entitled to an administrative expense (see docket no. 197, p. 24-28). AT&T argues that the administrative expense priority granted by section 364(a) is automatic. COLLIER ON BANKRUPTCY 503-37 ¶ 503.06[5][b] (16th ed. rev. 2010). AT&T continues citing Collier to say that "[a]s long as the obligation was incurred in the ordinary course of the debtor's business and as long as the expense fits generally within the 'actual, necessary' standard applicable to all section 503(b)(1) administrative expense, the debt will be entitled to treatment as an administrative priority." *Id.* AT&T argues that by continuing to pass traffic to AT&T post-

petition, UTEX has incurred obligations to AT&T Texas under the ICA.  Quoting the Supreme Court:

> If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services, which, depending on the circumstances of a particular contract, may be what is specified in the contract.

*N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) (internal citations omitted). According to the Fifth Circuit, claims qualify as an "actual and necessary cost" under section 503(b)(1)(A), where a claim arises post-petition and as a result of actions taken by the trustee that benefitted the estate. *Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.)*, 258 F.3d 385, 387 (5th Cir. 2001) (citing *In re TransAmerican Natural Gas Corp.*, 978 F.2d at 1417 (finding that a "*prima facie* case under § 503(b)(1) may be established by evidence that (1) the claim arises from a transaction with the debtor-in-possession; and (2) the goods or services supplied enhanced the ability of the debtor-in-possession's business to function.")  As for the reasonable value of the services, UTEX is not challenging the contract rate, it is challenging the classification of traffic type, and this Court has already rejected this argument.

Based on the above discussion, the Court finds that AT&T is entitled to an administrative expense for the ongoing use of its services by UTEX.  Having found that AT&T's interpretation of Docket 33323 and the Order on Reconsideration to be the correct interpretation, the contract rate at which AT&T has been billing UTEX is correct.  As for the timing of the payment, the Court agrees with UTEX that payment need not be immediate, but the Court has discretion on the timing, but the claim must be paid on the effective date of the plan.  *See* COLLIER ON BANKRUPTCY 503-13 ¶ 503.03[1][b].  AT&T discusses three factors a court should look at in exercising its discretion over timing: (1) the prejudice to the debtors, (2) the hardship to

claimant, and (3) potential detriment to other creditors.  *In re TI Acquisition, LLC*, 410 B.R. 742, 746 (Bankr. N.D.Ga. 2009) (citing *In re Global Home Prods., LLC*, 2006 WL 3791955 (Bankr. D.Del. Dec. 21, 2006)).  Based on these factors, the Court finds that the claim need not be paid immediately.

       7.     <u>Requiring UTEX to Immediately Assume or Reject or to Allow AT&T to Terminate the ICA</u>

AT&T argues that the Court should require UTEX to assume immediately or reject the ICA, or, alternatively, grant AT&T relief from the automatic stay in order to suspend and terminate the ICA (see docket no. 148, p. 10-11).  AT&T acknowledges that, under Section 365(a) of the Bankruptcy Code, a debtor may assume or reject any executory contract or unexpired lease.  AT&T argues that a debtor's ability to assume or reject is not unlimited. Section 365(d)(2) provides that:

> In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

AT&T argues that such relief is necessary so that AT&T does not continue to suffer pecuniary losses as each day passes.

UTEX responds to this argument by stating that AT&T provides no justification for shortening the time period under 365(d)(2).  UTEX discusses the progress in Docket 26381 and the work with the PUC in establishing a new ICA between AT&T and UTEX, which is still, to this Court's knowledge, being negotiated.  UTEX argues that AT&T has deliberately spent ten

years trying to stop UTEX from getting a replacement agreement, and cannot delay the new agreement with one hand, and argue for the rejection of the current ICA with the other.[5]

AT&T argues that the Court should lift the stay and allow AT&T to suspend and terminate the ICA due to the debtor's post-petition breach thereof. AT&T states that courts have held that a debtor's failure to make post-petition payments constitutes "cause" for relief from the stay and have allowed a non-debtor party to terminate contracts where there was no possibility the debtor was able to perform under the ICA (docket no. 148, p. 11 (internal citations omitted)). AT&T discusses a test for showing a *prima facie* case to support the cause for relief from the automatic stay. *See **In re Milstein***, 304 B.R. 208, 212 (Bankr. E.D. Pa. 2004) (internal citations omitted). The *prima facie* case, according to the case cited by AT&T, must include "(1) a showing of an obligation owing by the debtor to the creditor; (2) a valid security interest as to which relief from stay is sought, (3) the cause justifying relief from stay, such as the post-petition or post-confirmation default." *Id.* The Bankruptcy Code defines a "security interest" as a "lien created by an agreement." 11 U.S.C. § 101(50). It appears the case cited by AT&T deals with lifting the stay for a secured creditor.[6] AT&T additionally cites to ***In re U.S. Brass Corp.***, 173 B.R. 1000 (Bankr. E.D.Tex. 1994). That case held:

> Relief from the automatic stay will be granted to an unsecured creditor, such as Shell and Celanese, only when the "balance of hardships" tips in the creditor's favor. When balancing the hardships in lifting the stay, the most important factor is the effect of such litigation on the administration of the estate; even slight interference with the administration may be enough to preclude relief.

---

[5] Additionally, UTEX posits that "AT&T and *certain elements at the TPUC* are apparently playing 'keep-away' out of the hope the clock will run and UTEX will end up with neither the current agreement nor a replacement agreement" (docket no. 187, p. 37 (emphasis added)). Having been referred by the parties countless times to the Order on Reconsideration, the Court has read the PUC's discussion under the heading "Standards of Conduct." *See* Order on Reconsideration at 6-8.

[6] AT&T filed its proof of claim as a secured creditor by virtue of a right of setoff "against any claim brought against AT&T Texas by the Debtor, the debtor-in-possession, any trustee or any estate representative, including, but not limited to any claims for reciprocal compensation, refunds, and billing disputes" (claim no. 15).

*Id.* at 1006 (internal citations omitted). Here, the Court believes that lifting the stay and allowing AT&T to cancel the ICA will be a death sentence to UTEX. While the Court understands AT&T's arguments, the Court finds that, in balancing the hardships, the stay should not be lifted.

Based on the above discussion, the Court finds that AT&T's request to lift the stay should be denied. However, the Court does find cause to compel UTEX to accept or reject the ICA. The Court finds UTEX shall have 21 days from the date a new agreement is reached between AT&T and UTEX, pursuant to Docket 26381, to accept or reject the ICA.

8.     The Sufficiency of AT&T's Proof of Claim

UTEX objects to AT&T's pre and post-petition claims on the basis that the claims lack sufficient documentation to meet the evidentiary requirement of Bankruptcy Rule 3001(c), and thus fails to establish the factors required under applicable law for claims based upon a writing. AT&T responds by stating that UTEX has the ICA, the PUC award and subsequent orders, and has all of AT&T's invoices constituting the basis for the claims. While AT&T's Proof of Claim did not contain all of this information, it gave a summary and offered to furnish copies of the agreements, orders, awards and other relevant documents upon request (see Claim 15). The Motion for Payment of Administrative Claim similarly lays out the relevant facts and includes a spreadsheet documenting their invoices (see docket no. 148). Based on the provided information, the Court finds the Proof of Claim sets forth the facts necessary to support the claim, and is therefore *prima facie* valid.[7]

---

[7] Collier does discuss the situation where the original proof of claim contains only summary information and lacks the documentation necessary to establish a *prima facie* validity. *See* COLLIER 3001-27 ¶ 3001.09[1]. Under this type of situation "the claimant may have the burden of establishing its claim for the excess amounts…if it is these types of charges which represent the challenged amount." *Id.* at 3001-27-28. While UTEX could argue that AT&T only provided summary information, the "summary information" AT&T provided explains the history and bills sufficiently to establish *prima facie* validity.

B.    <u>Factual Disputes</u>

At the outset, it should be noted that a proof of claim is afforded *prima facie* validity under Bankruptcy Rule 3001(f), and this Court found above that AT&T's Proof of Claim is to be afforded *prima facie* validity.

1.    <u>AT&T Changing the Method of Calculating No-CPN</u>

The crux of UTEX's argument here is that after UTEX filed its bankruptcy petition, UTEX changed its practices so that it met the 90% threshold as required by the ICA, which means there should have been no charges for no-CPN traffic. UTEX asserts that they met this threshold in March 2010, and communicated this to AT&T. UTEX states that AT&T initially disputed this contention and told UTEX the bills were perfect, but then issued an adjustment purporting to remove invalid CPN charges for June 2010 through September 2010. UTEX argues that their challenge to the bill ultimately resulted in AT&T admitting to billing errors. This, UTEX claims, casts sufficient doubt on AT&T's proof of claim to destroy the *prima facie* validity afforded to proofs of claim under Bankruptcy Rule 3001(f), for "clearly AT&T's billings after September 2007 are indeed not so perfect after all" (docket no. 187, p. 13). UTEX argues that AT&T must "start at ground zero and prove up every penny it claims it is entitled to receive." *Id.*

UTEX next argues that AT&T has changed its billing methods from that approved by the Docket 33323 Arbitrator. UTEX asserts that AT&T admitted to UTEX that AT&T deviated from the method of calculating whether the 10% threshold has been met. AT&T had testified to the PUC that it performed the 90% threshold calculation by hand, with individuals running a query against the interconnection usage, which is calculated monthly from the first of the month to the last day of the month (docket no. 187, p. 15 (quoting docket no. 187, Ex. 6)). UTEX

asserts that during a meeting between the parties prior to the filing of the Motion for Summary Judgment, AT&T admitted it was performing the threshold calculation on a quarterly basis. UTEX asserts that the overages AT&T corrected for the adjustment were a result of AT&T's change from the prior "every month manual" practices that AT&T described to the Arbitrator and that she approved in the Award of Docket 33323. Therefore, according to UTEX, there should be discovery and a contested hearing on AT&T's proof of claim.

AT&T responds by arguing that UTEX's assertion that AT&T has changed its methods of calculating no-CPN/invalid-CPN lacks any factual support. AT&T asserts they made no changes to the method of calculating the amounts owed for purposes of the invoices for all usage after September 2007.

UTEX responded to AT&T's Response to UTEX's Motion for Summary Judgment by stating that AT&T misrepresents UTEX's arguments. UTEX asserts they are merely requesting that AT&T provide enough information for it to validate AT&T's calculations. UTEX argues that AT&T will not "break out" how much of its billing for post-September 2007 relate to "invalid CPN" billings. UTEX additionally argues that AT&T is no longer monitoring CPN delivery on a monthly basis. UTEX presents the testimony of an AT&T witness stating that "AT&T Texas reviews this [CPN delivery] data monthly to determine if UTEX is passing CPN as required. AT&T Texas determines the total number of messages a CLEC routed to the AT&T Texas local interconnection network over a calendar month" (docket no. 201, p. 14 (quoting testimony given by Mr. Cole to the PUC)). UTEX additionally presents testimony by its other representatives, including Mr. Dignan, where AT&T representatives purportedly told the PUC that it does the threshold check every month. UTEX asserts that the new invoices are not for traffic during a "calendar month." They assert that UTEX's invoices include traffic beginning

36

on the 5th of each month through the 4th of the next. Because AT&T is not following the calendar month, according to UTEX, AT&T's invoices are wholly inconsistent with the ICA requirement as interpreted by the PUC in Docket 33323. They are not in accord with the ICA or Docket 33323 and cannot be accepted as valid for any purpose.

AT&T argues that their bills are in the industry standard format that was approved and validated by the PUC. AT&T asserts that nothing has changed since the Docket 33323 Award. AT&T argues that UTEX's argument about it changing the method with respect to the determination of whether the monthly 90% CPN threshold is met is a misrepresentation of the record and the arbitration award. AT&T argues that UTEX is confusing two issues – (1) the relevant monthly measurement period for determining the percentage of no-CPN calls and (2) the frequency with which AT&T reviews the data to determine whether UTEX or other CLECs are meeting the 90% threshold. What the Arbitrator found was "that a calendar month should be the measurement period to determine whether the percentage of calls passed with CPN is less than 90%." Docket 33323 at 125. The question the Arbitrator was answering was "[w]hat is the measurement period to determine whether the 'percentage of calls passed with CPN['] is less than 90%?" *Id.* at 124. The Court interprets this language to require AT&T to look at the calls passed during a calendar month as the relevant period in assessing if UTEX met the 90% threshold. The Award says nothing about how often AT&T must review that data to determine whether UTEX met the threshold. AT&T asserts that it performs a manual review of the monthly period on a quarterly basis. The Court therefore agrees with AT&T's argument that UTEX is confusing two separate issues.

This interpretation also resolves the issue over the credit UTEX received. AT&T asserts that they were reviewing the CPN data on a quarterly basis. Upon their quarterly review, they

noticed that for the calendar month of June 2010, UTEX met the monthly 90% threshold. By meeting this threshold, non-CPN calls passed by UTEX would automatically be deemed local, and free of access charges going forward. Because AT&T had charged UTEX for the non-CPN calls passed by UTEX for the quarter, AT&T issued a credit to UTEX.

AT&T additionally points out that UTEX submitted no evidence that there is anything incorrect about AT&T Texas' pre and post-petition invoices. UTEX has responded by stating that they need more information to reconcile AT&T's invoices with UTEX's records. According to AT&T, their bills have not changed since the Docket 33323 Award. AT&T asserts the bills are in the industry standard format that was approved and validated by the PUC. Assuming this is correct, it is worth reviewing the Arbitrator's decision in respect to the issue of whether AT&T provided sufficient call detail to quantify any amounts that may be owed. *See* Docket 33323 at 125-127. AT&T stated that in response to UTEX's requests at the time of the Arbitration Award, AT&T had provided various information to UTEX. *Id.* at 126-27. AT&T additionally claimed that even if AT&T had not provided UTEX with the information, UTEX had its own Call Detail Records ("CDRs") that it could use to reconcile the invoice or to show that the invoices are consistent with the UTEX CDR. *Id.* at 127. In coming to its decision, the Arbitrator found that AT&T provided sufficient call detail to UTEX, but additionally noted "that UTEX can use its own CDRs to reconcile the AT&T Texas bills." *Id.* UTEX responded by saying that it has reviewed its own CDRs and that review revealed "significant discrepancies between [UTEX's] CDRs and AT&T's invoices" (docket no. 199, p. 39). UTEX asserts they observed "significant discrepancies" with regard to both "invalid CPN" charges and for traffic they assert is "ESP" traffic that should not incur an access charge.[8] UTEX states that it was a review of their CDRs that allowed UTEX to determine that AT&T was imposing invalid CPN charges for

---

[8] The Court, however, has ruled that UTEX's arguments regarding ESP are incorrect.

months when UTEX met the 90% threshold. UTEX asserts that the parties still disagree over the quantification of AT&T's credit for the months where AT&T issued a credit. However, UTEX submits no evidence for how or why they dispute the credit.

UTEX makes the argument that AT&T's bills have undergone changes in procedure, which in turn has resulted in erroneous billing, which in turn destroys any credibility of AT&T's invoices and are therefore not sufficient to meet the requirements of Bankruptcy Rule 3001(c) and (f). Having found that AT&T's bills are sufficient to be given *prima facie* validity, the Court finds that UTEX presents no evidence sufficient to show that AT&T has changed its bills in order to cast doubt on the bills, requiring the burden to be shifted to AT&T to prove up their bills. The Court therefore finds AT&T's proof of claim survives the attack on its validity based on UTEX's assertion that the billing methods have changed and there is therefore no need for discovery or a trial.

2.     The Date UTEX Began Meeting the Required Percentage of CPN

UTEX asserts that "the parties dispute when UTEX crossed that line" (docket no. 199, p. 14). However, UTEX provides no evidence that they began meeting the required threshold at a different date. UTEX asserts they have a reasonable basis to dispute this claim, based on their other arguments for AT&T's bills being invalid, which the Court has already dismissed. Having already held that UTEX's CDRs had given them sufficient information to refute AT&T's assertions, the Court, in the absence of any evidence to the contrary, finds that AT&T's proof of claim survives this attack on their validity as well.

3.     The Necessity of a Factual Hearing

At the conclusion of its Motion for Summary Judgment, UTEX pleads for either a denial of AT&T's Proof of Claim or for a factual hearing to determine the appropriate amount. In this

portion of their Motion for Summary Judgment, UTEX asserts the same arguments discussed above to account for a dispute over all "access usage" after November 2007. UTEX argues that AT&T has the burden of proving how much the Proof of Claim is related to "invalid CPN" charges that AT&T calculated in the same manner as was approved by the Award and confirmed by the Commission. Before any amounts can be approved, UTEX argues there "must be discovery and a hearing, and AT&T must present a witness and proper exhibits and be subject to cross-examination and through this process prove up its claims" (docket no. 187, p. 39). As discussed, UTEX has not presented sufficient evidence to overcome the *prima facie* validity afforded AT&T's proof of claim. The PUC found that AT&T's bills were in industry-standard format and that UTEX has sufficient information in its CDRs to compare to AT&T's bills to dispute those bills. UTEX has not done this and has therefore not overcome the *prima facie* validity afforded AT&T's claim, and therefore the Court finds no need for a factual hearing

## CONCLUSION

Having gone through the facts of the case and considered the evidence and briefing submitted by the parties, this Court finds that the Court can rule on the parties' competing motions for summary judgment.

IT IS THEREFORE ORDERED that for the arguments that any administrative claim held by AT&T is not immediately payable, that UTEX should not be compelled to immediately assume or reject the ICA, and that the automatic stay should not be lifted to allow AT&T to suspend or terminate the ICA, Debtor's Motion for Summary Judgment (docket no. 187) is GRANTED;

IT IS FURTHER ORDERED that for all other requested relief, Debtor's Motion for Summary Judgment (docket no. 187) is DENIED;

IT IS FURTHER ORDERED that for the argument that any administrative claim held by AT&T is immediately payable, that UTEX should be compelled to immediately assume or reject the ICA, and that the automatic stay should be lifted to allow AT&T to suspend or terminate the ICA, AT&T's Motion for Summary Judgment (docket no. 188) is DENIED;

IT IS FURTHER ORDERED that for all other requested relief, AT&T's Motion for Summary Judgment (docket no. 188) is GRANTED;

IT IS FURTHER ORDERED that UTEX's Objection to Claim of Southwestern Bell Telephone Company d/b/a AT&T Texas (docket no. 162) is DENIED;

IT IS FURTHER ORDERED that for the purpose of finding AT&T is owed an administrative claim, AT&T's Motion (A) for Allowance and Immediate Payment of Administrative Claims and (B) For Entry of An Order Compelling the Debtor to Immediately Assume or Reject the Interconnection Agreement with the Debtor and (C) For Relief From the Automatic Stay so that AT&T Texas May Suspend or Terminate the Interconnection Agreement (docket no. 148) is GRANTED;

IT IS FURTHER ORDERED that for all other requested relief, AT&T's Motion (A) for Allowance and Immediate Payment of Administrative Claims and (B) For Entry of An Order Compelling the Debtor to Immediately Assume or Reject the Interconnection Agreement with the Debtor and (C) For Relief From the Automatic Stay so that AT&T Texas May Suspend or Terminate the Interconnection Agreement (docket no. 148) is DENIED.

# # #